### A98A0492. HOWARD v. THE STATE.
(505 SE2d 768)

BLACKBURN, Judge.

Spratt Howard was convicted of armed robbery and sentenced to life without parole pursuant to the mandatory sentencing provisions for recidivist offenders under OCGA § 17-10-7 (c). Howard appeals, contending that the trial court committed numerous errors. For the reasons discussed below, we affirm Howard's conviction and sentence.

1. In his first six enumerations of error, Howard contends that, in sentencing him to life without parole, the trial court improperly followed the procedural guidelines of OCGA § 17-10-7. We disagree.

OCGA § 17-10-7 (c) provides: "[A]ny person who, after having been convicted under the laws of this state for three felonies or having been convicted under the laws of any other state or of the United

States of three crimes which if committed within this state would be felonies, commits a felony within this state other than a capital felony must, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served." OCGA § 16-8-41 (b) states that "[a] person convicted of the offense of armed robbery shall be punished by death or imprisonment for life or by imprisonment for not less than ten nor more than 20 years." OCGA § 16-8-41 (d) provides that "[a]ny person convicted under this Code section shall, in addition, be subject to the sentencing and punishment provisions of Code Sections 17-10-6.1 and 17-10-7." Therefore, the sentence mandated in this case is life imprisonment without parole.

OCGA § 17-10-2 sets out certain standards regarding presentencing hearings. OCGA § 17-10-2 (c) provides: "In all cases tried by a jury in which the death penalty or life without parole may be imposed, upon a return of a verdict of 'guilty' by the jury, the court shall resume the trial and conduct a presentence hearing before the jury. The hearing shall be conducted in the same manner as presentence hearings conducted before the judge as provided for in subsection (a) of this Code section. Upon the conclusion of the evidence and arguments, the judge shall give the jury appropriate instructions, and the jury shall retire to determine whether any mitigating or aggravating circumstances, as defined in Code Section 17-10-30, exist and whether to recommend mercy for the defendant. Upon the findings of the jury, the judge shall fix a sentence within the limits prescribed by law."

At such a hearing, "the judge shall hear additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty or nolo contendere of the defendant, or the absence of any prior conviction and pleas, provided that only such evidence in aggravation as the state has made known to the defendant prior to the defendant's trial shall be admissible." OCGA § 17-10-2 (a).

The record in this case reflects that the trial judge held a presentence hearing; however, he dismissed the jury before it began. During the course of the hearing, Howard's counsel did not object to the admission of evidence of Howard's prior felonies and affirmatively stated that he had been given notice of the intended use of Howard's prior convictions. Nevertheless, Howard now contends that he did not receive proper notice that the State was going to use his prior convictions, that the State failed to prove the voluntariness of certain guilty pleas regarding his prior felonies, that the jury should have been allowed to participate in the presentencing hearing, and that the sentence imposed was unconstitutionally disproportionate to

the crime. Each of these contentions will be considered in turn.

(a) "If the State intends to introduce evidence that defendant is a recidivist for sentencing purposes, it must notify defendant of any conviction it intends to use in aggravation of punishment pursuant to OCGA § 17-10-2 (a)." (Punctuation omitted.) *Hatcher v. State*, 224 Ga. App. 747, 750 (2) (a) (482 SE2d 443) (1997). Although Howard complains that he did not receive appropriate notice, "[Howard's] counsel did not object to the admission of [Howard's prior] convictions and affirmatively stated he did not contest their admission, thereby waiving error." Id. For the same reason, we need not consider Howard's contention that his prior guilty pleas were involuntary.

(b) "The purpose of § 17-10-2 is to give defendant a chance to examine his record to determine if the convictions are in fact his, if he was represented by counsel, and any other defect which would render such documents inadmissible during the pre-sentencing phase of the trial." (Punctuation omitted.) *Hatcher*, supra at 750 (2) (a). "In *State v. Baldwin*, 167 Ga. App. 737, 740 (4) (307 SE2d 679) (1983), this court determined that a trial court has no discretion to probate or suspend a portion of a mandatory life sentence imposed pursuant to OCGA § 17-10-7 (a). In *Baldwin*, as in this case, the imposition of a life sentence was mandatory pursuant to OCGA § 17-10-7 (a), and the court held that OCGA § 17-10-1 (a), which expressly abrogates the trial court's discretionary power to grant probation in cases in which life imprisonment or capital punishment is imposed, applied. See *Mosely v. State*, 203 Ga. App. 275, 276-277 (4) (416 SE2d 736) (1992)." *Stone v. State*, 218 Ga. App. 350, 351 (1) (461 SE2d 548) (1995).

OCGA § 17-10-2 (c) generally requires the presence of the jury during presentencing hearings where their input regarding mitigating and aggravating circumstances under OCGA § 17-10-30 along with the need for mercy would prove useful to the trial judge in determining the appropriate sentence. Here, however, the application of OCGA § 17-10-2 (c) would be both unnecessary and illogical as the trial judge had no discretion in determining the length of Howard's sentence, the possibility of parole, or the possibility of probation. Therefore, in this case, it would serve no purpose to retain the jury for the presentencing hearing. Whether the jury had been present during the presentencing hearing or not, Howard could have received no other sentence than the one which he was given. "The law will not require [an] unnecessary procedure of the trial court. There is no necessity to conduct a pre-sentence hearing on the issue of punishment as the trial court possesses no discretion in such an instance." (Punctuation omitted.) *Hasty v. State*, 210 Ga. App. 722, 725 (2) (437 SE2d 638) (1993).

(c) Howard's contention that the imposition of the sentence man-

dated by OCGA § 17-10-7 (c) is unconstitutionally disproportionate to his crime is meritless. "This Court has followed *Harmelin v. Michigan*, 501 U. S. 957 (111 SC 2680, 115 LE2d 836) (1991), holding that the choice of sentence by the legislature 'is insulated from judicial review unless it is wholly irrational or so grossly disproportionate to the severity of the crime that it constitutes cruel and unusual punishment. (Cits.)' [Cit.] '(T)he point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.' *Rummel v. Estelle*, 445 U. S. 263, 285 (III) (100 SC 1133, 63 LE2d 382) (1980); *Grant v. State*, 258 Ga. 299, 300 (2) (368 SE2d 737) (1988). In *Rummel*, the Supreme Court of the United States held that a recidivist statute providing a life sentence for a third felony conviction did not violate the Eighth Amendment proscription against cruel and unusual punishment. Furthermore, a sentence which is not otherwise cruel and unusual does not become so simply because it is 'mandatory.' *Harmelin v. Michigan*, supra at 995 (IV). Unlike the decision to impose the death penalty, a determination that a defendant should be sentenced to life imprisonment without possibility of parole does not require a consideration of mitigating factors. *Harmelin*, supra at 995-996 (IV). See also *Knight v. State*, 243 Ga. 770, 772 (1) (257 SE2d 182) (1979)." *Ortiz v. State*, 266 Ga. 752, 753-754 (2) (470 SE2d 874) (1996). Accordingly, the mandatory punishment of OCGA § 17-10-7 (c) cannot be considered unconstitutional under either the federal or state constitution. Id.

(d) Howard further contends that, because his conviction for armed robbery was his first serious violent felony, OCGA § 17-10-6.1 (c) (1) requires that he be eligible for parole after 14 years. Howard, however, has misread the law. OCGA § 17-10-6.1 (c) (1) states, "for a first conviction of a serious violent felony in which the defendant has been sentenced to life imprisonment, that person shall not be eligible for any form of parole or early release administered by the State Board of Pardons and Paroles until that person has served a minimum of 14 years in prison." Contrary to Howard's contention, this statute gives a defendant no affirmative right to parole, and, as such, it is not in conflict with recidivist sentencing under OCGA § 17-10-7.

2. In his seventh enumeration of error, Howard contends that the evidence was insufficient to support his conviction. We disagree.

"On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Howard] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The standard for reviewing a denial of a motion for a directed verdict of acquittal is whether under the rule of *Jack-*

*son v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. Moreover, the test established in *Jackson* is the proper test for us to use when the sufficiency of the evidence is challenged, whether the challenge arises from the overruling of a motion for directed verdict or the overruling of a motion for new trial based upon alleged insufficiency of the evidence." (Citations and punctuation omitted.) *Lester v. State*, 226 Ga. App. 373, 376 (2) (487 SE2d 25) (1997).

The evidence, in the light most favorable to the verdict, shows that Howard, with the help of an accomplice, robbed Baron Reed at gunpoint in a hotel parking lot. Based on a photo lineup, Reed identified Howard as the man who robbed him. Reed also identified Howard at trial. In addition, Tamatha Brown, who had known Howard for approximately 20 years, testified that she witnessed the robbery taking place, and she also identified Howard as the robber. As a result, the jury in this case had sufficient evidence before it to determine that Howard was guilty of armed robbery beyond a reasonable doubt.

3. In his eighth enumeration of error, Howard contends that the court erred in denying his motion for new trial because the trial court's reading of the names of the grand jurors listed on the indictment to the jury unduly prejudiced his case. This contention is without merit.

Prior to reading the indictment, the trial judge warned, "I caution you that the indictment itself is not evidence in the case and should not be considered as evidence. It is merely the formal means by which an accused is brought forward and charged with a commission of a criminal offense." At the time the indictment was read, Howard failed to object to the reading of the grand jurors' names. As such, this issue must be considered waived for purposes of appellate review. Even if Howard had preserved his argument, however, it would fail. As the trial judge instructed the jurors that the indictment was merely the manner by which charges were made and was not evidence, no harmful error occurred. *Strong v. State*, 232 Ga. 294, 302 (206 SE2d 461) (1974).

4. In his ninth enumeration of error, Howard contends that the trial court erred in denying his motion for new trial because testimony that the police "had his photograph on file" unduly prejudiced his case. Again, we disagree.

Howard argues that the testimony regarding the photo lineup shown to Reed for purposes of identifying him supported the inference that Howard was one of the "usual suspects" being sought by the police department. We have reviewed the transcript, and we find no

merit in Howard's interpretation of the testimony. While Investigator Monty Mohr testified that the photographs used for the lineup were "photographs that [he had] available through his means at the police department," Mohr did not testify either that Howard was a "usual suspect" or that his photograph was kept "on file" at the police department.

5. In his tenth enumeration of error, Howard contends that the trial court erred in denying his motion for new trial because testimony that he had paid his cousin to perform oral sex on him was unduly prejudicial as it made the jury "dislike" him. Again, we disagree.

As an initial matter, Howard failed to object to this evidence both during a *Jackson-Denno* hearing and during testimony before the jury. "Because [Howard] failed to specifically object to the evidence on the ground that it impermissibly placed his character in issue, he may not raise that objection for the first time on appeal." *Allison v. State*, 217 Ga. App. 580, 582 (2) (459 SE2d 557) (1995). Furthermore, even if there were any merit to Howard's contention, the error would be harmless in light of the overwhelming evidence of his guilt. *Thomas v. State*, 226 Ga. App. 441, 444 (5) (487 SE2d 75) (1997).

6. In his eleventh enumeration of error, Howard contends that the trial court erred in not charging the jury on robbery by intimidation and theft by taking as lesser included offenses of armed robbery. This contention is also without merit.

OCGA § 5-5-24 generally requires that requests to charge be made in writing. Furthermore, " 'failure to charge on a lesser included offense is never error absent a written request to do so.' " *Dukes v. State*, 224 Ga. App. 305, 310 (6) (480 SE2d 340) (1997). As Howard made no such written request in this case, his claim must fail.

7. Finally, Howard, by and through his present attorney, filed a motion to stay this appeal and requested that his case be remanded to the trial court in order that he may amend his motion for new trial to include a claim of ineffective assistance of counsel. There is no such procedure available to appellant as a stay of his appeal, notwithstanding the language contained in *Herndon v. State*, 229 Ga. App. 457 (494 SE2d 262) (1997). If an appellant raises on appeal the issue of ineffectiveness of his original trial counsel, and appellant did not have the opportunity to raise such issue in the trial court, we will ordinarily remand the case to the lower court for resolution of such issue, with the right in the appellant to appeal the ruling. To the extent that Division 12 of *Herndon*, supra at 461, purports to establish a procedure whereby the appellant should have filed a motion for stay of direct appeal, it is hereby overruled.

Our Supreme Court has clearly stated that "the rule that an ineffectiveness claim must be raised at the earliest practicable moment requires that that claim be raised *before appeal* if the opportunity to do so is available; that the ability to raise the issue on motion for new trial represents such an opportunity; and that the failure to seize that opportunity is a procedural bar to raising [that] issue at a later time." (Punctuation omitted; emphasis in original.) *Glover v. State*, 266 Ga. 183, 184 (2) (465 SE2d 659) (1996). Accordingly, if an appellant obtains new counsel prior to appeal, and counsel has the opportunity to raise the issue of ineffectiveness through a motion for new trial but fails to do so, we will not remand the case but will find that appellant has waived his right to raise the issue. Furthermore, in such an instance, even if counsel uses his opportunity to raise the issue of ineffectiveness through a motion for new trial but fails to request an evidentiary hearing, the issue has been waived for purposes of appeal. *Dawson v. State*, 258 Ga. 380 (369 SE2d 897) (1988). However, "the requirement of *Dawson v. State* . . . does not apply to a case where the appellate counsel did not participate in the motion for new trial, and the issue of ineffectiveness of counsel is [properly] raised for the first time on appeal." *Johnson v. State*, 259 Ga. 428, 430 (3) (383 SE2d 115) (1989). Nevertheless, the better practice would be for appellant to immediately request that this Court remand such a case for an evidentiary hearing when a claim of ineffective assistance is properly raised for the first time on appeal.

This case falls into the first category of cases discussed in the preceding paragraph. After Howard's retention of new counsel, the trial court vacated its earlier denial of Howard's motion for new trial and gave Howard 30 days in which to amend such motion to include allegations of ineffective assistance of counsel. No amendment was timely made, and the trial court once again denied Howard's motion for new trial. Because Howard, through his new appellate counsel, had the opportunity to assert ineffective assistance of counsel below and failed to do so, such assertions cannot be raised for the first time on appeal. *White v. Kelso*, 261 Ga. 32 (401 SE2d 733) (1991).

*Judgment affirmed. Andrews, C. J., McMurray, P. J., Pope, P. J., Johnson, P. J., Smith, Ruffin, JJ., and Senior Appellate Judge Harold R. Banke concur. Beasley and Eldridge, JJ., concur in the judgment only as to Division 7.*

DECIDED JULY 16, 1998 —
RECONSIDERATION DENIED JULY 31, 1998 — 

*James W. Smith*, for appellant.

*Harry N. Gordon, District Attorney, John A. Pursley, Assistant District Attorney*, for appellee.